# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

TERESA CLIFTON GOLDEN, ET AL.

v.

COLUMBIA CASUALTY COMPANY, ET AL.

CIVIL ACTION

NO. 13-547-JWD-SCR

## RULING AND ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment on Behalf of Sheriff Jason Ard, Major Jim Brown, and Captain Chad McGovern (R. Doc. 55) and the Motion for Partial Summary Judgment on Behalf of Columbia Casualty Company (R. Doc. 56). The motions are opposed. (R. Doc. 62). Oral argument was heard on May 7, 2015.

Having carefully considered the law, the facts in the record, and the parties' arguments, the motions are granted in part and denied in part. All claims against Ard, Brown, McGovern and Columbia Casualty Company ("Columbia"), as insurer for these defendants, are dismissed except the claim against Ard and Columbia for Ard being vicariously liable in his official capacity for the state law torts of Deputy Brandon Johnson and Sergeant Steven Erdey.

### I. Factual Background

A full recitation of the relevant factual background was provided in this Court's Ruling and Order concerning the motions for summary judgment filed by Johnson, Erdey, and Plaintiffs. See R. Doc. 68). The Court will provide only those facts relevant to the disposition of the motions at issue in this ruling.

### A. *Romans* 13:4

Sheriff Ard testified in his deposition that the "13:4" on his badge is not a badge number but is rather a reference to *Romans* 13:4.[1] (R. Doc. 62-8, p. 10). "13:4" is on all Livingston Parish Sheriff's Office badges . (*Id.*, p. 11). The Sheriff made the final decision to put the number on the badges. (*Id.*, p. 11). According to Ard, *Romans* 13:4 is generally where police officers get their authority to be police officers. (*Id.*, p. 12). Ard stated that this fact is pretty well known by all law enforcement, and the Livingston Parish Sheriff's Office should know it by now. (*Id.*).

The Sheriff was asked whether Scripture would be more important than Louisiana law (both in his capacity as Sheriff and in his personal capacity), and the Sheriff responded, "Well, unfortunately, you know, the law is the law, and we have to follow it, no matter what, I mean, whatever the law says. … But there are also the Scriptures I believe that we get our authority from the All Mighty God." (*Id.*, p. 13). He said Scripture was more important. (*Id.*, p. 13-14). However, the Sheriff testified:

> Q: And more important than the Louisiana Constitution or the Federal Constitution[?]
>
> A: I'm still going to uphold the Louisiana law, no matter what.
>
> Q: But certainly Scripture would be – take precedence over those things, right?
>
> A: Unfortunately, it can't take precedence over it. You still have – I mean, my beliefs is my beliefs. But at the end of the day, I still have to follow the law, the letter of the law.
>
> …
>
> A: You still have to uphold the law, no matter what the scripture says, unfortunately.

---

[1] *Romans* 13:4 (King James) provides, "For he is the minister of God to thee for good. But if thou do that which is evil, be afraid; for he beareth not the sword in vain: for he is the minister of God, a revenger to execute wrath upon him that doeth evil."

(*Id.*, p. 14-15). When asked what the purpose of having *Romans* 13:4 identified with the Sheriff's Office, the Sheriff responded:

> A: Romans 13:4 is basically something that we put on there to make sure they understand who they get their authority from. Their authority does not supersede that of God. I want to make sure that they understand that we are here to serve the public … as well as protect the public. And that basically just gives them hopefully a Christian guideline to go by. We're here to serve the people. We're here as missionaries of God. That's what He.- He says so in the Bible.

(*Id.*, p. 15-16). The Sheriff said that the deputies are not trained in Scripture or in the role that Scripture plays in their working life, and there is no informal training either. (*Id.*) There are no Bible studies through the Sheriff's Office, but there is a monthly prayer breakfast that the deputies are welcome to attend. (*Id.*).

### B. Disciplining Johnson and Erdey

Johnson testified that, between the time of the incident and the time he became aware of this lawsuit, he had not spoken to Sheriff Chad Ard, Major Jim Brown, or Captain McGovern (the "Sheriff Defendants") about the case or the arrest. (R. Doc. 62-3, p. 2-3). Erdey said that he too had not spoken to Ard, McGovern, and Brown about the incident and had not spoken to anyone at the Sheriff's Office regarding what happened prior to setting up times for the deposition. (Doc. 62-5, p. 18-19).

In an unauthenticated document labelled "Livingston Parish Sheriff's Office – Incident Report" signed by Major J. Brown, Brown writes that, on June 11, 2013, he met with Sheriff Ard. and Lt. Col. Brian Smith to discuss the complaint and allegations by Teresa Golden. (R. Doc. 62-10). According to the document, "During this meeting all reports, photographs, voluntary statements, etc. were reviewed." (*Id.*). It was determined during this meeting that all LPSO deputies followed proper procedures during this incident and that this would conclude our

internal review of the matter." (*Id.*). The document further provides that, on June 13, 2013, Brown contacted Mrs. Golden while he was on speakerphone with Captain McGovern in the room. (*Id.*). Brown advised her of his findings. (*Id.*).

## II. Discussion

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991).

## B. Vicarious Liability under 42 U.S.C. § 1983

The Sheriff Defendants argue that, if the Court finds that the individual officers are not liable, then the Sheriff Defendants cannot be liable under federal law. Further, the Sheriff Defendants argue that there is no vicarious liability under section 1983.

The Court rejects the Sheriff Defendants' first argument. The Court previously held that some of the § 1983 claims against Johnson and Erdey survived (See R. Doc. 68), so the Sheriff Defendants make a moot point here. However, the Sheriff Defendants are correct that there is no vicarious liability under § 1983. *See, e.g., Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 380-381 (5th Cir. 2005) ("Supervisory officials cannot be held liable under section 1983 for the actions of subordinates … on any theory of vicarious or *respondeat superior* liability."). Thus, Plaintiffs must establish liability for each Sheriff Defendant separately.

## C. Section 1983 Official Capacity Liability

### 1. Parties' Arguments

The Sheriff Defendants argue that the claims asserted by the Plaintiffs against the Sheriff in his official capacity should be dismissed. The Sheriff Defendants note that this is a claim against the Parish and thus requires a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. The Sheriff Defendants argue that the Plaintiffs have not pled that there is an official policy or that it was the moving force of a constitutional violation. Rather, Sheriff Defendants pled only ratification and endorsement by the Sheriff. The Sheriff Defendants further contend that this requires an extreme factual scenario, which is not present here, and further that there is no liability for ratification where the

Sheriff accepts his subordinate's version of events, so long as they are not "manifestly indefensible." According to the Sheriff Defendants, Plaintiffs have not established the "moving force element," which requires a showing of deliberate indifference. Further, Plaintiffs must ordinarily show a pattern of abuses, and no pattern is shown here. Additionally, certain Fifth Circuit cases have held that a decision to not discipline an employee made in good faith does not warrant a finding of deliberate indifference.

Plaintiffs respond that the official policy of the Livingston Parish Sheriff is that his authority and his deputies' authority come from God, specifically *Romans* 13:4. The Plaintiffs argue that this passage is incompatible with Louisiana law's allowance for resisting unlawful arrest. Further, "the law of Louisiana and of the United States does not recognize law enforcement officers as missionaries or ministers of God, much less as revengers bearing a sword to execute wrath upon evil doers." (R. Doc. 62, p. 18).

The Sheriff Defendants respond that Plaintiffs have not identified a policy or custom because the Sheriff's Office still follows the law. Further, there still is no liability under the ratification theory.

### 2. *Law on Municipal Liability Generally*

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hoffpauir v. Columbia Cas. Co.*, No. CIV.A. 12-403-JJB, 2013 WL 5934699, at *10 (M.D. La. Nov. 5, 2013) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985)). Thus, by bringing an action against Sheriff Ard in his official capacity, the plaintiffs are seeking to impose liability on the Livingston Parish Sheriff's Office under 42 U.S.C. § 1983. *Id.*

The Fifth Circuit has explained:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but instead only for acts that are directly attributable to it "through some official action or imprimatur." To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result."

*James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted). The Fifth Circuit has also stated:

> Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. [*Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001)] ("In addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation.") (citing [*Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978)]). In other words, a plaintiff must show direct causation, i.e., that there was "a direct causal link" between the policy and the violation. *Id.*; *see also* [*Johnson v. Deep East Tex. Reg'l Narcotics Traffcking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004)] (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir.1992) ("must be more than a mere 'but for' ")).
>
> A plaintiff must also show that, where the official policy itself is not facially unconstitutional, it was adopted "with 'deliberate indifference' as to its known or obvious consequences.' " *Johnson*, 379 F.3d at 309; *see also Piotrowski*, 237 F.3d at 579. Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992); *see also Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir.2000).
>
> Of the moving force and deliberate indifference elements of municipal liability, we have stressed: "These requirements must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.' " *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir.1998) (quoting *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

*James*, 577 F.3d at 617-618.

Even assuming that the *Romans* 13:4 were a policy for purposes of § 1983 (a dubious proposition at best), the Court finds that the Plaintiffs have failed to show a "direct causal link between the policy and the violation." Plaintiffs have shown only that all officers knew about the policy. (R. Doc. 62-8, p. 12). The Plaintiffs have not, however, presented any testimony from Johnson or Erdey that they thought they were acting as agents of God when they were in the Goldens' home or that they believed Teresa was an evil doer in need of punishment. Brian testified that Johnson looked angry when he allegedly slammed Teresa's head into the wall (R. Doc. 62-6, p. 3), but there is no evidence of biblical motivation. As stated above, there must be more than a "but for" causation, and Plaintiffs have failed to prove this. Without more, the Court would be collapsing the causation requirement into respondeat superior liability, which is impermissible under § 1983 case law. Accordingly, the Court rejects Plaintiffs' arguments.

*3. Ratification*

It is unclear from the record whether the Plaintiffs seek to use the ratification theory to impose liability on the city. The Court will address this argument and find that the Plaintiffs have failed to prove ratification.

Initially, the Court notes that it will not consider the Livingston Parish Sheriff's Office Incident Report (R. Doc. 62-10), which shows that an investigation was done into the incident and the Sheriff's Office found no wrongdoing by Johnson and Erdey. The document is not authenticated; there is no evidence establishing its authenticity, and it is not self-authenticating because it is neither sealed nor certified. *See Williams v. Bank of New York Mellon*, No. 3:09-CV-1622-BH, 2010 WL 3359461, at *4 (N.D. Tex. Aug. 23, 2010)). Thus, for the reasons articulated in its prior ruling, the Court will not consider this document. See R. Doc. 68 (citing *Hall v. Johnson*, No. CIV.A. 12-00099-BAJ, 2013 WL 870230, at *1 (M.D. La. Mar. 7, 2013)).

Accordingly, the only evidence of ratification is the facts that Erdey and Johnson were not interviewed by Ard, Brown, and McGovern after the incident. The Court will not impose liability on such a slender reed.

Further, the Fifth Circuit has explained, "our precedent has limited the theory of ratification to "extreme factual situations." *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.1998)); *See also Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986);

In *Peterson*, an intoxicated couple was sleeping in their truck after being at a restaurant when officers allegedly pulled the husband out of the vehicle onto the ground, wrestled the husband while on the ground, handcuffed him, pulled him up by the cuffs' chains, and unnecessarily kneed in the thigh, causing a ruptured femoral artery requiring two surgeries and a hospital stay lasting almost two weeks. 588 F.3d at 843-44. The Court concluded:

> Under [the "extreme factual situations"] precedent, we cannot say that this case presents an extreme factual situation. *Compare Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985) (finding ratification in case in which officers "poured" gunfire onto a truck and killed innocent occupant), *with Snyder*, 142 F.3d at 798 (refusing to find ratification in case in which officer shot fleeing suspect in the back).

*Id.* at 847.

*Peterson* demonstrates that this case does not involve the kind of extreme factual scenario required for ratification liability. This is not, as in *Grandstaff,* an instance where officers "poured" bullets onto a truck and killed an innocent. This is much closer to *Peterson*, where force was purportedly applied to an individual without justification. Further, the personal injuries in *Peterson* appear much more severe than those in the case at bar. Accordingly, *Peterson* controls, and summary judgment is warranted.

*Peterson* demonstrates another reason why summary judgment is inappropriate. In *Peterson*, the dissent argued against summary judgment on the grounds that the officers were not disciplined for the use of force and that the chief testified that both officers complied with the City's polices and procedures. *Id.* at 848 n. 2. In rejecting this argument, the Fifth Circuit explained that, even construing the facts in a light most favorable to the plaintiff, there was no issue of material fact, and summary judgment was appropriate. The Fifth Circuit explained:

> In *City of St. Louis v. Praprotnik*, a case on which [plaintiff] relies [and which is the basis of ratification liability], the Supreme Court emphasized that "[s]imply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy ...." 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Additionally, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority ...." *Id. See also Kibbe v. City of Springfield*, 777 F.2d 801, 809 n. 7 (1st Cir.1985) ("The [district] court suggested that the City had ratified defendant Perry's action by clearing him and finding that he had acted in accordance with the police department's policies. We are unconvinced that a failure to discipline Perry or other officers amounts to the sort of ratification from which a jury properly could infer municipal policy.").

*Id. See also Milam v. City of San Antonio*, 113 Fed. App'x. 622, 627 (5th Cir. 2004) (quoting to the same propositions from *Praprotnik* and explaining that "[s]uch limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of *respondeat superior,* which theory *Monell* does not countenance.").

Thus, under *Peterson*, Sheriff Defendants are entitled to summary judgment. The sole pieces of evidence that the Sheriff Defendants ratified Johnson and Erdey's conduct are the testimony of Johnson and Erdey that the Sheriff Defendants' failure to interview the officers. But "the mere failure to investigate" is insufficient to establish liability. Thus, as a matter of law, the Sheriff Defendants are not liable.

Finally, even if the Court were to consider the excluded Incident Report (Doc. 62-10), summary judgment would be appropriate. As the Plaintiffs contend, the Incident Report does establish that the officers concluded that Johnson and Erdey "followed proper procedures during this incident." (*Id.*). But the Incident Report specifically says that, when the Sheriff met to discuss Teresa's complaints, "all reports, photographs, voluntary statements, etc. were reviewed." (*Id.*). Thus, contrary to Plaintiffs, an investigation was done.

This fact is significant because the Fifth Circuit has explained, "Good faith statements made in defending complaints against municipal employees do not demonstrate ratification. *See* [*Peterson*, 588 F.3d at 838]. .A 'policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality. *Id.* at 848 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986))." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). Assuming that the incident report were to be considered (which it will not be), the investigation is evidence of good faith, and the Plaintiffs have failed to bring forward any summary judgment evidence establishing bad faith. For this reason too, summary judgment is granted.

In sum, Plaintiffs have failed to demonstrate a genuine issue of material fact on the issue of ratification. Accordingly, the Sheriff Defendants' summary judgment is granted, and the claims against the Sheriff in his official capacity are dismissed.

**D. Section 1983 Individual Capacity Liability**

*1.Parties Arguments*

The Sheriff Defendants argue that the sole basis for imposing liability on them in their individual capacity must be that there was a sufficient causal connection between their wrongful conduct and the constitutional violations alleged. However, the only complaint against these

defendants is that they ratified, endorsed, and were deliberately indifferent to the officer's conduct. According to the Sheriff Defendants, the Middle District has rejected liability on this basis. The Sheriff Defendants further argue that the Plaintiffs cannot demonstrate an inadequate supervision claim. Moreover, even if there were a constitutional violation, Plaintiffs cannot overcome qualified immunity because it is not settled law that their actions were illegal "beyond debate."

Plaintiff argues that the Sheriff Defendants are liable for ratifying the officer's conduct. Specifically, Plaintiffs claim that the Sheriff Defendants determined that the officers followed proper procedures despite not talking to the officers after the incident.

### 2. Analysis

The Plaintiffs' argument is basically that the Sheriff Defendants failed to discipline Johnson and Erdey. As in the above analysis, this Court has dismissed § 1983 claims made against a supervisor in his individual capacity on the grounds that, "[w]ithout something additional, the failure to discipline is not sufficient to rise to the level of a 'ratification' or 'endorsement.'" *Thomas v. Gulotta*, No. CIV.A. 13-688-JJB, 2014 WL 1621610, at *3 (M.D. La. Apr. 22, 2014) *reconsideration denied*, No. 13-688-JJB-SCR, 2015 WL 410700 (M.D. La. Jan. 29, 2015) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278-79 (5th Cir. 1992)).

In *Hoffpauir v. Columbia Casualty Company, Inc.*, No. CIV.A. 12-403-JJB, 2013 WL 5934699 (M.D.La. 2013), this Court granted a partial motion for summary judgment in favor of the Defendant Sheriffs as to the individual capacity claims under section 1983. *Id.* at *9. The *Hoffpauir* plaintiffs asserted that the defendant sheriff had "ratified or endorsed" the defendant officer's actions by "failing to take disciplinary action against him for his conduct." *Id.* at *9. The Court disagreed, stating

> there is no evidence presented that Defendant Graves [i.e., the Sheriff at the time of the incident] intended to adopt the actions of [the defendant officer] on August 6, 2011 as his own. There is only the failure to discipline [the defendant officer]. *Without something additional, the failure to discipline is not sufficient to rise to the level of a "ratification" or "endorsement."* See *Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir.1992). Plaintiffs have failed to present any additional evidence that Defendant Graves knew the conduct at-issue was wrong and still refused to discipline [the defendant officer], or otherwise willfully refused to discipline despite knowing [the defendant officer's] conduct was improper. There does not appear to be any evidence presented as to the failure to discipline for the present conduct, and thus, nothing to support a finding of "ratification" or "endorsement," other than the plaintiffs' conclusory allegations. In sum, there is simply no evidence or indication that Defendant Graves intended to adopt, ratify, or endorse the conduct of [the defendant officer] through his failure to impose discipline.

*Id*. at *9 (emphasis added).

As in *Hoffpauir*, the Plaintiffs here have not asserted anything other than a failure to discipline as evidence of ratification or endorsement. These allegations alone are insufficient to establish liability against the Sheriff Defendants in their individual capacities under section 1983.[2]

### E. Punitive Damages – Federal and State Law

The Sheriff Defendants argue that none of the claims against these defendants were motivated by an evil motive or intent or involved the reckless or callous disregard or indifference to federally protected rights.

Under § 1983, punitive damages require evil motive or reckless or callous indifference to federally protected rights of others. *Smith v. Wade*, 461 U.S. 30 (1983). Even construing the facts in a light most favorable to the Plaintiffs, there is no evidence of such conduct by Ard, Brown, and McGovern. Summary judgment on this issue is granted.

---

[2] While the Sheriff Defendants raised the issue of failure to supervise in their motion for summary judgment, the Plaintiffs have not alleged a failure to train or supervise claim. Nor is there any evidence in the record supporting a claim for failure to supervise. Accordingly, the Court will not address this issue.

Further, "[p]unitive damages are not allowed under Louisiana law in absence of a specific statutory provision." *Hoffpauir v. Columbia Cas. Co.*, No. CIV.A. 12-403-JJB, 2013 WL 5934699, at *14 (M.D. La. Nov. 5, 2013) (citing *Zaffuto v. City of Hammond,* 308 F.3d 485, 491 (5th Cir.2002)). Because Plaintiffs cite to no statute supporting the award of punitive damages for their state law claims, the Sheriffs' Defendants' motion is granted, and this claim is dismissed.

### F. State Law Claims

#### *1. Vicarious Liability*

##### a. Parties' Arguments

The Sheriff Defendants argue that claims against Major Brown and Captain McGovern fail because they did not employ the deputies; they were merely supervisors, and vicarious liability requires an employment relationship. Further if the state law claims against Johnson and Erdey are dismissed, then the claims against the Sheriff should be dismissed as well.

##### b. Analysis

Concerning Brown and McGovern, Defendants' motion is granted. Louisiana Civil Code article 2320, the basis of vicarious liability in this context, provides that "*Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.*" (emphasis added). Thus, vicarious liability attaches when there is an employment relationship. *See* William E. Crawford, 12 La. Civ. L. Treatise, Tort Law § 9:1 (2d ed. 2014) ("The broad category of respondeat superior is governed by [Article 2320], which places responsibility *on employers for the damage done by their employees.*") (emphasis added); *See also Sparks v. Progressive American Ins. Co.*, 517 So.2d 1036, 1038 (La. App. 3 Cir. 1987) ("Article 2320 is applicable only if a plaintiff first proves the

existence of an employer-employee relationship.") (citation omitted). There are several factors the Louisiana courts use to determine whether an employment relationship exists including: "[t]he right of control and supervision, selection and engagement, payment of wages, and the power of dismissal." *Walker v. Kroop*, 96-0618 (La. App. 4 Cir. 7/24/96), 678 So. 2d 580, 584.

Plaintiffs do not in either the Complaint or their Opposition to the motion for summary judgment assert that the Brown or McGovern are "employers" of the defendant officers. Nor do the Plaintiffs make any argument whatsoever as to any of the factors necessary to establish an employer-employee relationship. While Brown and McGovern may have been Johnson and Erdey's superiors, the Plaintiffs have set forth no evidence to establish the employer-employee relationship necessary to impose vicarious liability on Brown and McGovern. Thus, the state law vicarious liability claims against them are dismissed.

However, the Court rejects the Sheriff Defendants' argument as to Ard. Because the Court denied summary judgment as to state law claims against Johnson and Erdey, under the above law, the Sheriff can be vicariously liable for these claims. "However, '[u]nder Louisiana law, a parish sheriff is liable in his official, but not personal, capacity as an employer of a deputy, for the deputy's torts in the course and scope of employment .' " *Hoffpauir v. Columbia Cas. Co.*, No. CIV.A. 12-403-JJB, 2013 WL 5934699, at *13 (M.D. La. Nov. 5, 2013) (quoting *Hall v. St. Helena Parish Sheriff's Dept.*, 668 F.Supp. 535, 540 (M.D.La.1987)). Accordingly, the claims against Ard in his official capacity for the alleged torts of Johnson and Erdey survive.

*2. Independent Acts of Negligence*

a. Parties' Arguments

The Sheriff Defendants argue there is no basis for imposing liability on any of these defendants for negligence. Their failure to discipline after the incident cannot amount to

negligence with the incident itself. Further, the Sheriff Defendants are not liable because of La. R.S. 9:2798.1, the state-law immunity statute.

Plaintiffs do not address this argument except to say that the Sheriff Defendants ratified the officers' acts by not speaking with the officers and had the religious policy discussed above. Thus, according to Plaintiffs, the Sheriff Defendants officially adopted a policy incompatible with Louisiana law.

b. Analysis

The Sheriff Defendants' motion for summary judgement is granted on the negligence claim. Concerning the failure to discipline and interview the officers, the Sheriff Defendants are correct that the Plaintiffs fail to raise an issue of fact as to the causation prong of the negligence inquiry; the failure to discipline and interview *after* the event could not have caused her damages, and Plaintiffs have presented no evidence that it has. Similarly, there is no evidence that the *Romans* 13:4 "policy" caused the event. As discussed above, there is no testimony that the officers were acting according to this policy on the night of the incident, even construing the facts in a light most favorable to the Plaintiffs. There is no proof of even "but for" causation, much less legal causation. Accordingly, the claims against the Sheriff Defendants for negligence are dismissed.

III.  Conclusion

Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment on Behalf of Sheriff Jason Ard, Major Jim Brown, and Captain Chad McGovern (R. Doc. 55) and the Motion for Partial Summary Judgment on Behalf of Columbia Casualty Company (R. Doc. 56) are **GRANTED IN PART** and **DENIED IN PART**; and

**IT IS FURTHER ORDERED** that all claims against Ard, Brown, McGovern and Columbia Casualty Company ("Columbia") are **DISMISSED**, except the claim against Ard and Columbia for Ard being vicariously liable in his official capacity for the state law torts of Deputy Brandon Johnson and Sergeant Steven Erdey.

Signed in Baton Rouge, Louisiana, on June 11, 2015.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**